UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:17-CR-41-TLS |
| | ) | |
| MICHAEL SMITH | ) | |

**OPINION AND ORDER**

The Defendant, Michael Smith, pled guilty to violating 18 U.S.C. § 922(g)(1), which makes it unlawful for a person who has been convicted of a felony to possess a firearm. The probation officer drafted a Presentence Investigation Report (PSR) in preparation for sentencing. This Opinion and Order resolves the Defendant's objection to the PSR.

**THE PRESENTENCE INVESTIGATION REPORT**

At 12:45 a.m. on June 17, 2017, officers were dispatched to Brown Street in Fort Wayne, Indiana. Callers to the 911 emergency system reported that a man walking a dog was arguing with others and waving a gun around. Responding officers located the Defendant. He appeared intoxicated and refused to cooperate with officers. When they apprehended the Defendant, he had two Smith and Wesson magazines in his pocket. The handgun was recovered nearby where the Defendant had thrown it when he saw the police arrive. The handgun had a loaded magazine with one round in the chamber.

Applying Guideline § 2K2.1(a)(4)(A), the Defendant's base offense level was set at 20. The PSR included a four-level enhancement to the base offense level on grounds that the Defendant possessed the firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6)(B) (providing for increase in base offense level if the defendant used or possessed

any firearm "in connection with another felony offense"). The probation officer's basis for applying this enhancement was the information presented in paragraphs nine through sixteen of the PSR, which relayed the events leading up to his arrest. The identified felony was Criminal Recklessness under Indiana statute. The offense level was further enhanced by two points for the Defendant's obstruction of justice, related to the attempts he made from jail to have a female acquaintance go to the location where he threw the firearm to retrieve it, believing that officers had not found the gun.

After taking into account the Defendant's acceptance of responsibility adjustment, the total offense level was 23. This offense level, when combined with the Defendant's criminal history category of IV, yielded a Guideline range of 70 to 87 months of imprisonment. The Defendant objects to the other-felony enhancement under § 2K2.1(b)(6)(B), and argues that his total offense level should be 19. If his objection is sustained, the Guideline range would be 46 to 57 months of imprisonment.

## ANALYSIS

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson*, and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence). This Opinion and Order is intended to resolve the issues related to the first step, calculation of the Guidelines range.

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted). *See also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *England*, 555 F.3d at 622). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.* However, it is the Government's burden to prove by a preponderance of the evidence that an enhancement applies. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006); *United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir. 1992).

As relevant here, U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony

3

offense." The Guidelines commentary explains that "in connection with" means the enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. U.S.S.G. §2K2.1, cmt. 4. "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* n.14(C). Additionally, the enhancement must be "related to the offense of conviction." *United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016). In other words, the firearm "must be part of the same course of conduct or common scheme or plan' as the offense of conviction." *Id.* (first citing U.S.S.G. § 2K2.1, cmt. 14(E)(ii); then citing *id.* § 1B1.3(a)(2)); *see also United States v. Clinton*, 825 F.3d 809, 811 (7th Cir. 2016) (stating that, to avoid application of § 2K2.1(b)(6) to "offenses that may be only tenuously connected to the offense of conviction . . . the other offense must fall within relevant conduct in order for the enhancement to apply").

The Court has no trouble concluding that the actions the Defendant took with the firearm immediately prior to his arrest are part of the relevant conduct of the offense. The Defendant does not argue otherwise, but focuses on whether the Government has established, by a preponderance of the evidence, that his actions constituted a felony. In particular, he disputes that his actions would constitute Criminal Recklessness, as codified in Indiana Code § 35-42-2-2, which requires that a person "recklessly, knowingly, or intentionally perform[] an act that creates a substantial risk of bodily injury to another person." Ind. Code § 35-42-2-2(a). The offense is a Level 6 felony if the defendant is armed with a deadly weapon when he commits the offense. *Id.* § 35-42-2-2(b)(1).

4

The Defendant offers several facts that, he believes, remove his actions from the realm of Criminal Recklessness. The Defendant submits that if the 911 callers and the witnesses had reported that the Defendant pointed the handgun at a crowd of people, he would have been charged with Criminal Recklessness. Instead, he was only charged in state court with carrying a firearm without a license and possession of a firearm by a domestic batterer. He notes that the only caller who stated the Defendant was pointing the gun at people did so in response to a leading question by the 911 operator. Three other times, this same 911 caller only referred to the Defendant pulling out his gun. Second, he maintains that the facts of the case "do not make it possible to make a reliable determination of whether [the Defendant's] weapon was fully loaded with a round in the chamber." (Def.'s Br. 4, ECF No. 64.) His support for this contention is centered around the number of bullets referenced in the continuity sheets and lab reports generated in this case.

Based on these factual unknowns—whether he ever pointed a gun with a chambered round at another person—the Defendant then argues that his actions did not create a substantial risk of bodily injury within the meaning of the Indiana statute. To resolve the Defendant's objection, the Court first considers what facts are supported by the record. The Court will then determine whether these facts would satisfy the elements of felony Criminal Recklessness.

The Court relies, in part, on Detective Wilkins's Report (Ex. 1 to Govt.'s Resp., ECF No. 66-1), which lists several witnesses to the events of the evening and describes their statements. Two of the witnesses, Rodney and Monica, reside at the same address in Granger, Indiana. They were with other people on Brown Street when they observed the Defendant walking with a dog. Rodney stated that he made a comment about the man having a nice dog, and the Defendant

5

started to argue with him. According to Rodney, the Defendant then pulled a gun out. Rodney told him to chill out, but he kept the gun out the remainder of the time. He did not point it at Rodney, but was waiving it around. Detective Wilkins also spoke to Monica. She stated that the Defendant did not point the gun at any particular person, but was waiving it around. These statements are consistent with Monica's statements to the 911 operator, where she indicated that the argument began after a comment about the dog, that the Defendant was waiving a gun around,[1] and that she was trying to keep her husband, Rodney, from engaging with the Defendant, even to calm him down.

A third witness, Alicia, was sitting on a front porch on Brown Street. She observed the exchange between Rodney and the Defendant, stating that the Defendant became hostile and walked toward Rodney after Rodney commented that the Defendant had a nice dog. She took the Defendant's arm and walked him away from Rodney. The Defendant was then standing in the street and pulled out a gun. Alicia stated that he pointed it at people and waived it around.

Another person who witnessed the event, Michael, stated that he told the Defendant to back up after the Defendant started to argue with the person who had commented about his dog. According to Michael, the Defendant started to point a handgun at everybody. Michael admitted that he was scared, as he was not accustomed to guns. According to Michael, the Defendant stated, as he walked away, that he would be back.

The Court has reviewed the recordings of the 911 calls. The Court does not relay the

---

[1] Monica's actual statement during the 911 call was that a guy was waiving a gun around "trying to shoot people." (Recording of 911 call, ECF No. 65.) The Defendant did not discharge his firearm, and the Court does not interpret her statement to mean that the Defendant was actually attempting to shoot at any particular person. Rather, the fact that the Defendant pulled the gun out in response to an argument, and was waiving it around as he continued to argue, gave the perception that he might potentially *use* the firearm and shoot someone.

entirety of those calls here, but notes that several facts can be gleaned from the callers' contemporaneous observations, particularly when combined with the responding officers' observations and the witness statements. The Defendant had a gun out, and was waving it around. He was agitated and arguing with people, and appeared to be intoxicated. Numerous people were in the immediate area, including juveniles. When the Defendant left, he threatened that he would be back.

The Court also credits Detective Deshaies's report [ECF No. 64-2] that the gun, when recovered from where the Defendant had thrown it, had a full magazine and a round in the chamber. The photographs taken of the firearm and the recovered magazines [ECF No. 66-2] are consistent with his report.

Having reviewed the parties' submissions, including the exhibits, the Court concludes that evidence having a sufficient indicia of reliability to support its probable accuracy supports the conclusion that it was more likely than not that the Defendant waived a loaded gun around and pointed it in the direction of a group of people with whom he initiated an argument. The fact that charging discretion did not lead to charges of Criminal Recklessness being pursued in state court is not proof to the contrary. It was also more likely than not that the Defendant was intoxicated, and that he threatened to come back to the area as he left.

The Court next considers whether the Defendant's conduct would support a conviction for felony Criminal Recklessness. Not all activity with a firearm creates a substantial risk of bodily harm to others. For example, in *Boushehry v. State*, 648 N.E.2d 1174, 1177 (Ind. Ct. App. 1995), the Court found that the State of Indiana failed to prove that the defendant's actions created a substantial risk of injury because the State did not present any evidence that anyone

was in or near the defendant's line of fire when he shot his rifle at Canadian geese across a vacant lot. Rather, the State argued only that there was a possibility that a motorist could have been passing by the lot. *Id.* Likewise, firing a pistol upwards towards an uninhabited field and woodlands did not create a substantial risk of injury to any person. *See Elliott v. State*, 560 N.E.2d 1266 (Ind. Ct. App. 1990) (finding the argument that a hunter could have been in the woods was "mere conjecture").

*Boushehry* and *Elliott* are instructive for the principle that a defendant's actions must do more than create a remote risk of bodily injury; the risk must have substance and actual existence. *See Smith v. State*, 688 N.E.2d 1289, 1291 (Ind. Ct. App. 1997) (defining substantial risk as "risk that has 'substance or actual existence'") (first quoting *Boushehry*, 648 N.E.2d at 1177; then citing *Elliott v. State*, 560 N.E.2d at 1267). However, this risk may be created even when a firearm is not discharged, or even loaded, depending on the circumstances. As the Indiana Supreme Court noted, "[t]he brandishing of a firearm in a congested area or during a dispute can create a variety of risks of bodily injury to others" sufficient to support a conviction for Criminal Recklessness, "regardless of whether the weapon is loaded." *Al-Saud v. State*, 658 N.E.2d 907, 910 (Ind. 1995); *see also D.B. v. State*, 658 N.E.2d 595 (Ind. 1995) (holding that a reasonable fact finder could conclude that the defendant's actions created a substantial risk of bodily injury to another person where he pulled out a handgun and pointed it across the street in the direction of a porch that was occupied by an individual he had previously argued with, and that individual's friends and family).

Here, the Court finds that the following factors highlight the risk of bodily injury the Defendant's actions created. He was in a residential area when he became involved in a heated

8

argument with several others. The Defendant was, by all accounts, the aggressor in the confrontation. In fact, what initiated the confrontation was an innocent and seemingly well-meaning comment about his dog. The Defendant further escalated when he pulled out a loaded gun and waived it around, causing those in the area to attempt to calm him down or to enter houses and call 911. The Defendant appeared intoxicated, and, even as he walked away, threatened that he would be back.

Indiana makes it a crime to "knowingly or intentionally point[] a firearm at another person." Ind. Code § 35-47-4-3(b). The Indiana Court of Appeals has stated that the Indiana statute's prohibition against pointing a firearm at a person "was intended to protect individuals from being placed in danger of death or bodily injury from the discharge of a firearm." *Armstrong v. State*, 742 N.E.2d 972, 976 (Ind. Ct. App. 2001) (noting that, because a firearm is a lethal weapon, "the potential for harm exists any time a firearm is pointed at a person" (emphasis omitted) (quoting *State v. Meier*, 422 N.W. 2d 381, 385 (N.D. 1998)). Although the Defendant is not accused of pointing his firearm directly at any particular person, and perhaps would not be found guilty under Indiana Code § 35-47-4-3(b), the Court finds the statements about risk to be on point. Waiving a loaded firearm in the general direction of others will place one or more of those people at risk of being injured. *See, e.g.*, *Brown v. State*, 790 N.E.2d 1061, 1066 (Ind. Ct. App. 2003) (sustaining three convictions for pointing a firearm that stemmed from a single incident in which the defendant waved his gun at individuals in an automobile because it put "each occupant at risk of injury from the discharge of the firearm").

This inherent risk explains why some of the witnesses, when describing the Defendant's conduct, stated that he pointed the gun at people, and others characterized his actions as waving

the gun around. That no one person was an intended target makes no meaningful difference to the degree of risk, as the reckless actions nonetheless would place any number of them at risk of being harmed by the discharge of a lethal weapon. This risk was certainly more appreciable than the remote risk that exists when it is *unknown* whether *any* people are near the line of fire. Not only is it known that several people were in the area, but the Defendant was also agitated, intoxicated, and escalating his response to the point of waiving around a firearm and threatening to come back. This created a variety of substantial risks to the individuals in the area, and supports a finding that the Defendant possessed the firearm in connection with felony Criminal Recklessness. The probation officer correctly applied the § 2K2.1(b)(6)(B) enhancement.

## CONCLUSION

Based on the above, the Court OVERRULES the Defendant's objection to the PSR. The Court CONFIRMS the Telephonic Sentencing Status Conference set for October 15, 2018, at 10:00 a.m., and the Sentencing set for October 22, 2018, at 3:00 p.m.

SO ORDERED on September 26, 2018

                                                s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT